Rovinski Renter
Pro Se
967 Kendall Dr Ste A-164
San Bernardino, Calif
Phone: (562) 505-2931
Email: stopseniorabusenow@gmail.com

Plaintiff In Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — SOUTHERN DIVISION (SANTA ANA)**

**ROVINSKI RENTER,**

Plaintiff

**SELECT PORTFOILO SERVICING, INC.; NATIONAL DEFAULT SERVICING CORPORATION et al.**

Defendant(s).

Case No.: 5:25-cv-00756 MRA (SPx)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROVINSKI RENTER; PROPOSED ORDER**

(Federal Rule of Civil Procedure 12(b)(1), 12(b)(6))

Filed and served concurrently with: (1) Plaintiff Opposition to Motion to Strike, (2)

| | |
|---|---|
| Date: | May 5, 2026 |
| Time: | 10:00 A.M. |
| Courtroom: | 9B |

| | |
|---|---|
| Complaint filed: | August 14, 2024 |
| Case Removed: | March 24, 2025 |
| Trial date: | None scheduled |

**DEMAND FOR JURY TRIAL**

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff ROVINSKI RENTER ("Plaintiff") respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss filed by Defendants Select Portfolio Servicing, Inc. ("SPS") and National Default Servicing Corporation ("NDSC") (collectively, "Loan Defendants"), brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. INTRODUCTION

Plaintiff submits this Opposition to correct the fundamental misstatements, omissions, and legal distortions underlying Defendants' Motion to Dismiss. The motion is built on a narrative that does not exist in the Second Amended Complaint ("SAC"), disregards binding authority, ignores entire categories of pled misconduct, and attempts to re-litigate issues this Court has already resolved. Defendants' framing is not merely inaccurate—it is strategically misleading.

Defendants also ignore that SPS inherited and continued to rely on defective loan-modification terms originating with Wells Fargo Bank, N.A., a servicing error pled in the SAC that remained uncorrected through the last overt act and directly supports Plaintiff's tolling and delayed-discovery allegations.

## II. LEGAL STANDARD (Rule 12(b)(6))

A motion to dismiss under Rule 12(b)(6) must be denied unless Defendants show that no set of facts consistent with the complaint would entitle Plaintiff to relief. The Court must accept all well-pled facts as true and draw all reasonable inferences in Plaintiff's favor. Dismissal is improper where, as here, the complaint alleges multiple independent theories of liability supported by detailed factual allegations.

A Rule 12(b)(6) motion cannot be granted by ignoring allegations, mischaracterizing the complaint, or relying on facts outside the pleadings. Defendants' motion violates all three

principles. The SAC contains extensive pre-sale and post-sale allegations that Defendants do not address. A motion that fails to confront the actual claims pled cannot meet the Rule 12(b)(6) standard.

At this stage, Plaintiff is not required to prove her claims. She must only allege facts that, if true, state a plausible claim for relief. Rule 8 requires only a short and plain statement giving Defendants fair notice of the claims and the grounds upon which they rest. Plaintiff is not required to provide evidentiary detail, attach documents, or negate Defendants' defenses. Defendants' attempt to impose a heightened evidentiary burden is improper and should be rejected.

Under Twombly and Iqbal, plausibility—not probability—is the governing standard. A claim is plausible when the facts alleged allow the Court to reasonably infer liability. The Court may not weigh evidence, resolve factual disputes, or credit Defendants' competing narrative at the pleading stage. Defendants' motion improperly invites the Court to do all three.

The Court's review is limited to the four corners of the complaint and documents incorporated by reference. Defendants may not rely on extrinsic evidence, disputed facts, or their own characterization of events. Their reliance on facts outside the pleadings renders the motion procedurally improper.

## III. <u>ARGUMENT</u>

### A. <u>DEFENDANTS IGNORE THE MAJORITY OF THE SAC, INCLUDING PRE-SALE AND POST-SALE MISCONDUCT</u>

#### 1. <u>Mr. Dailey's Declaration Misrepresents the Meet-and-Confer History</u>

Defendants rely on the Declaration of Steven M. Dailey to suggest that Plaintiff refused to meet and confer. This is incorrect. Mr. Dailey states: "To date, Plaintiff has failed to respond to my

meet and confer attempts." This statement is false. Plaintiff responded on January 23, 2026 by phone and on January 26, 2026 by email. Plaintiff did not "fail to respond"; she responded promptly and truthfully, explaining that she was medically incapacitated. Mr. Dailey's own Exhibit B contradicts his assertion, as it contains Plaintiff's January 26 email explaining her medical emergency and inability to meet and confer. Defendants' mischaracterization of the meet-and-confer history cannot support dismissal.

Moreover, a declaration is not evidence on a Rule 12(b)(6) motion, and Defendants' attempt to rely on extrinsic materials is improper.

2. <u>Defendants Ignore Extensive Pre-Sale and Post-Sale Misconduct Alleged in the SAC</u>

The motion also fails because Defendants ignore the majority of the SAC. The SAC pleads extensive pre-sale misconduct, including dual tracking, inaccurate and misleading communications, mishandling of wildfire-insurance proceeds, failure to provide a single point of contact, contradictory reinstatement figures, defective authority and chain-of-title irregularities, and failure to properly review Plaintiff for loss-mitigation options. The SAC further alleges that SPS repeatedly scheduled and rescheduled foreclosure activity during the federal COVID-19 moratorium, despite federal orders prohibiting servicers of federally backed loans from initiating or advancing foreclosure proceedings beginning March 18, 2020. The SAC also pleads extensive post-sale misconduct, including SPS's July 2, 2021 written communication stating the loan was still "active," July and August 2021 mortgage statements suggesting reinstatement remained available, coercive relocation offers, misapplication of insurance proceeds, and NDSC's refusal to provide a public auction sale unprivileged bidding records and sale documentation.

Defendants do not address these allegations at all. A motion that ignores the operative allegations of the complaint cannot be granted.

3. Unauthorized Property Entries During the COVID-19 Emergency Support Pre-Sale Misconduct Claims

The SAC further alleges that SPS and its third-party agents repeatedly entered Plaintiff's property during the COVID-19 emergency in violation of federal, state, and local pandemic safety orders. SPS sent inspectors and appraisers to Plaintiff's home during periods when in-person property access was restricted, when federal agencies had suspended non-essential property inspections, and when only desktop or video inspections were permitted. Federal servicing guidance during the COVID-19 emergency suspended non-essential in-person property inspections for federally backed loans, making SPS's repeated physical entries even more unreasonable and dangerous for an elder and dependent adult—and—was entitled to heightened protection. These unauthorized entries caused fear, destabilization, and further harm, and they form part of the pre-sale misconduct Defendants entirely ignore. Such conduct is independently actionable under HBOR, the UCL, and elder-abuse statutes, and it further supports tolling and delayed discovery.

4. Borrower Delinquency Does Not Immunize Servicers From Liability

Defendants repeatedly assert that Plaintiff "fell behind" on her mortgage payments, as though borrower hardship immunizes servicers from statutory compliance. It does not. A borrower's delinquency does not excuse violations of HBOR, does not excuse dual tracking, does not excuse inaccurate or misleading communications, does not excuse mishandling of insurance proceeds, and does not excuse post-sale misconduct. California courts have repeatedly held that servicers remain liable for statutory and tort violations regardless of borrower default.

Defendants' attempt to shift blame onto Plaintiff also ignores the reality that millions of Americans—particularly elders and disabled individuals—fell behind during the COVID-19 pandemic due to unprecedented medical, economic, and social disruption. Plaintiff was a long-time homeowner who maintained her property for years before the pandemic. COVID-19 hardship does not absolve servicers of statutory duties, nor does it transform their violations into Plaintiff's fault. Defendants' narrative is both factually inaccurate and legally irrelevant.

## B. SUBJECT-MATTER JURISDICTIONS EXITS

### 1. The SAC Pleads Federal Claims That Confer Jurisdiction Under 28 U.S.C. § 1331

Defendants' Rule 12(b)(1) challenge fails for a simple reason: the SAC expressly alleges federal claims, and this Court therefore has subject-matter jurisdiction under 28 U.S.C. § 1331. The SAC pleads violations of Regulation X (12 C.F.R. § 1024.41) and federal foreclosure-related protections, which independently confer federal-question jurisdiction. Supplemental jurisdiction exists under 28 U.S.C. § 1367(a) because the state-law claims arise from the same nucleus of operative facts. Defendants' assertion that "Plaintiff now only pleads causes of action under state law" is factually incorrect and directly contradicted by the SAC itself.

### 2. Diversity Jurisdiction is Irrelevant, and Even if Considered, it is Satisfied

Defendants' jurisdiction argument also misstates the law. Diversity jurisdiction is irrelevant where federal-question jurisdiction exists. Even if diversity were required, the SAC alleges complete diversity between Plaintiff and the Loan Defendants, and the citizenship of dismissed or unserved parties does not defeat diversity. Defendants' claim that "this Court lacks a basis for jurisdiction" is legally unsupported and should be rejected.

//

3. Defendants' Jurisdiction Challenge is Meritless

Defendants' Motion to Dismiss is meritless. It misstates the SAC, misstates the law, and ignores the Court's prior orders. The SAC properly alleges federal claims that confer subject-matter jurisdiction under 28 U.S.C. § 1331, and the remaining state-law claims fall squarely within supplemental jurisdiction under 28 U.S.C. § 1367. Defendants' assertion that "Plaintiff now only pleads state-law causes of action" is demonstrably false and contradicted by the SAC itself. Their jurisdictional challenge fails as a matter of law and should be rejected

**C. THE SAC MEETS THE RULE 12(B)(6) STANDARD AND MUST BE LIBERALLY CONSTRUED**

Under Rule 12(b)(6), dismissal is proper only where a complaint lacks a cognizable legal theory or fails to allege sufficient facts to support one. The Court must accept all well-pled factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Twombly; Iqbal. Because Plaintiff proceeds pro se, the Court must construe her allegations liberally and afford her the benefit of every reasonable inference. Erickson v. Pardus; Akhtar v. Mesa.

This liberal construction is especially required where, as here, Plaintiff is a Black elder and dependent adult with disabilities, and where the allegations arise from a context of systemic inequities recognized by federal, state, and local authorities. The San Bernardino County Board of Supervisors formally adopted a Resolution declaring racism a public health crisis, acknowledging systemic disparities in housing, economic stability, and access to justice. Plaintiff's vulnerability and the systemic barriers she faced must be considered in evaluating the sufficiency of her allegations and the applicability of equitable doctrines.

//

//

## D. DEFENDANTS' HBOR ARGUMENTS CONTRADICT THE STATUTE AND BINDING CASE LAW

Defendants' HBOR arguments are contrary to the statute and to binding authority. HBOR expressly authorizes damages for both pre-sale and post-sale violations of Civil Code §§ 2923.6 and 2923.7. Defendants cite no case holding otherwise because none exists. Their position is not merely incorrect—it is a misstatement of the statute. California courts have repeatedly held that HBOR damages claims survive a completed foreclosure sale so long as the borrower seeks monetary relief rather than rescission. Plaintiff seeks only the damages the statute authorizes, and Defendants' reliance on § 2924(c) is therefore misplaced.

## E. THE CONCLUSIVE-PRESUMPTION DOCTRINE (§ 2924(C)) DOES NOT APPLY

### 1. Authority Defects Alleged in the SAC Render the Sale VOID, Not Voidable

The conclusive-presumption doctrine under Civil Code § 2924(c) does not apply for two independent reasons. First, the SAC alleges authority defects that, if proven, render the foreclosure sale VOID, not voidable. As pled, the assignment transferring the beneficial interest to Wilmington/CSMC was not recorded until December 2, 2020, creating a break in the recorded chain of title and leaving Plaintiff without clear notice of who held authority to enforce the loan. The SAC further alleges that SPS and NDSC acted without lawful authority under Civil Code § 2924(a)(6) when they initiated and advanced foreclosure proceedings despite this break in title and despite contradictory beneficiary.

A foreclosure conducted without statutory authority is VOID, not voidable. A void sale is not protected by § 2924(c), is NOT subject to *tender,* and is NOT governed by any *statute of*

*limitations*. See Dimock v. Emerald Properties, 81 Cal.App.4th 868 (2000); Sciarratta v. U.S. Bank, 247 Cal.App.4th 552 (2016); La Jolla Group II v. Bruce, 129 Cal.App.4th 706 (2005).

2. Plaintiff Does Not Seek Rescission; Plaintiff Seeks Statutory Damages

Second, even if the Court were to disregard these authority defects, Plaintiff does not seek rescission in the SAC. She seeks damages expressly authorized by HBOR, the UCL, and the Elder Abuse Act. Section 2924(c)'s conclusive-presumption rule applies only to challenges seeking to unwind a sale—not to statutory damages claims based on pre-sale misconduct, post-sale misconduct, or servicer violations. Thus, Defendants' reliance on § 2924(c) fails under either theory. Plaintiff does not seek rescission at this stage solely because the Court's December 18, 2025 order limited amendment to damages-only claims; Plaintiff expressly preserves all substantive rights to seek rescission, quiet title, or other equitable relief upon newly discovered evidence or upon leave of Court, and preserves all issues for appellate review.

3. Authority Defects Already Pled in the SAC Support Delayed Discovery and the VOID-Sale Theory

In addition, Defendants ignore authority-related defects already pled in the SAC that support delayed discovery and Plaintiff's VOID-sale theory. As alleged, the assignment transferring the beneficial interest to Wilmington/CSMC was not recorded until December 2, 2020, creating a break in the recorded chain of title and leaving Plaintiff without clear notice of who held authority to enforce the loan. Plaintiff further alleges that she first learned of this break in the chain of title only after a third-party real-estate investor—who was evaluating the Property for potential purchase—came to her with the contract and alerted her to the defect, underscoring that the defect was not reasonably discoverable earlier given Defendants' concealment and contradictory communications.

The SAC also alleges inconsistent beneficiary information and confusion regarding the true holder of the beneficial interest. These defects were not reasonably discoverable earlier given Plaintiff's disability, medical crises, and the extraordinary circumstances of the COVID-19 period. Critically, a break in the recorded chain of title materially depresses market value because buyers cannot rely on the authority of the foreclosing parties, suppressing competitive bidding and resulting in artificially low sale prices — precisely what occurred here, as the Property sold for significantly less than offers Plaintiff had received prior to the sale. Authority defects render a foreclosure sale VOID, not voidable, and a VOID sale is not protected by § 2924(c), is not subject to *tender*, and is not insulated by the *presumption* of regularity. See Moeller v. Lien, 25 Cal.App.4th 822 (1994); Nguyen v. Calhoun, 105 Cal.App.4th 428 (2003); Dimock v. Emerald Properties, 81 Cal.App.4th 868 (2000); Sciarratta v. U.S. Bank, 247 Cal.App.4th 552 (2016); La Jolla Group II v. Bruce, 129 Cal.App.4th 706 (2005).

4. The Foreclosure Occurred During the Federal Moratorium and the Deed Was Recorded Late

Defendants also ignore a critical structural defect: the alleged June 29, 2021 foreclosure sale occurred during the federal COVID-19 real-estate foreclosure moratorium, and the trustee's deed was not recorded until August 19, 2021—well beyond the statutory 15-day deadline. Under Civil Code § 2924h(c), a sale is not "*FINAL*" until the deed is recorded. Thus, the foreclosure remained legally "in progress" throughout the federal moratorium period.

Plaintiff's experience confirms this non-finality. After discovering that an unstamped door-handle hanger had been left by a third party, Plaintiff contacted SPS in distress. SPS did not inform her that a sale had occurred; instead, SPS told her the sale was "PENDING." This admission contradicts Defendants' litigation position and demonstrates that even the servicer did

not treat the property as sold. SPS's own statements show that the foreclosure had not been FINALIZED, that Plaintiff was still treated as the borrower, and that Defendants concealed the true status of the property.

SPS's contradictory communications—including "ACTIVE LOAN" statements, reinstatement quotes, and the "Pending Sale" admission—further demonstrate that the foreclosure was not final and that Defendants engaged in misleading and destabilizing conduct. The delayed recording strongly suggests concealment of an unlawful and wrongful foreclosure and supports Plaintiff's claims for unfair business practices, financial elder abuse, and both pre-sale and post-sale damages.

### F. PLAINTIFF'S POST-SALE PROPERTY LOSSES ARE ACTIONABLE UNDER CIVIL CODE § 3336

Defendants also ignore Plaintiff's post-sale damages arising from the wrongful and unlawful dispossession of nearly all of her personal property during and after the January 3, 2022 lockout. California Civil Code § 3336 expressly provides that the measure of damages for conversion includes the value of the property at the time of the taking, plus interest, and compensation for time and money lost. Plaintiff's allegations fall squarely within § 3336. These damages are independent of the foreclosure sale itself and remain actionable regardless of whether the sale is set aside. Defendants' attempt to erase these losses by characterizing them as "*IRRELEVANT*" or "*outside the foreclosure process*" is legally incorrect and ignores binding statutory authority.

### G. THE MOTION IS PROCEDURALLY IMPROPER AND MISUSES THE COURT'S PRIOR ORDER

The motion is also procedurally improper. It relies on facts outside the pleadings, misquotes the SAC, and attempts to convert Plaintiff's compliance with the Court's November 21, 2025 Order

into a basis for dismissal. Plaintiff filed exactly what the Court ordered: a narrowed SAC against SPS and NDSC. Defendants now attempt to weaponize that compliance. Because the SAC states multiple independent bases for relief—any one of which defeats dismissal—the Motion must be denied in its entirety.

1. Dailey's Motion Misstates the Procedural Posture and Ignores the Court's November 21, 2025 Order

Dailey's Motion improperly treats the SAC as if Plaintiff seeks to unwind the foreclosure sale. She does not. The SAC expressly seeks damages only, consistent with the Court's November 21, 2025 Order, which permitted Plaintiff to pursue HBOR, UCL, elder abuse, and servicing misconduct claims against SPS and NDSC.

The Motion also ignores that the SAC adds extensive factual detail, dates, statutory violations, and post-sale misconduct that were not present in earlier pleadings. The Court must evaluate the SAC as pled, not as Dailey reframes it.

2. Factual Allegations Involving Non-Parties Are Properly Included and Necessary

Plaintiff's background is not decorative; it is foundational. The SAC properly includes factual allegations involving non-parties and actors who will be added by motion, because Judge Almadani expressly limited amendment—not factual narrative—and authorized Plaintiff to seek leave to add additional defendants through a properly noticed motion. These allegations are essential to establishing statutory violations, pre-sale and post-sale misconduct, causation, damages, tolling, and elder-abuse elements. Rule 12 does not permit a defendant to strike or ignore well-pled facts simply because the individuals involved are not yet named parties. Defendants' attempt to erase these facts is not a legitimate Rule 12 argument; it is an improper

effort to narrow the factual record and preempt Plaintiff's forthcoming motion to add the responsible actors.

## H. THE SAC ALLEGES AUTHORITY-DESTROYING DEFECTS THAT RENDER THE FORECLOSURE VOID

The SAC alleges multiple defects that, if true, render the foreclosure VOID, not voidable, under *Dimock*, *Yvanova*, and *Sciarratta*. These include:

- foreclosure activity conducted during a federal moratorium,
- a trustee's deed recorded more than 50 days late,
- a defective chain of title,
- an invalid substitution of trustee,
- inconsistent beneficiary information, and
- the absence of a properly recorded power of attorney authorizing SPS to act.

Under Civil Code § 2924h(c), a sale is not final until the trustee's deed is recorded. Here, the Trustee's Deed Upon Sale was executed by NDSC on August 16, 2021, notarized on August 17, 2021, signed by Rugs Limited LLC on August 18, 2021, and not recorded until August 19, 2021—more than 50 days after the purported June 29, 2021 sale date. Because the deed was not recorded until August 19, 2021, the foreclosure remained legally "in progress" throughout the federal moratorium period. A sale conducted without authority is a legal nullity that cannot transfer title. Yvanova; Sciarratta. Dailey's Motion does not address these authority-destroying defects.

//

//

### I. THE SAC ALLEGES EXTENSIVE POST-SALE MISCONDUCT SUPPORTING HBOR, UCL, ELDER-ABUSE, AND SERVICING CLAIMS

Dailey's Motion ignores Plaintiff's detailed allegations of post-sale misconduct, including contradictory "ACTIVE LOAN" statements in July and August 2021, refusal to provide bidding records, misapplication of wildfire-related insurance proceeds, coercive relocation conduct, destabilizing communications, and the January 3, 2022 lockout resulting in the loss of nearly all Plaintiff's personal property. These allegations state independent claims for damages under HBOR, the UCL, and the Elder Abuse Act, regardless of the validity of the foreclosure sale. Post-sale misconduct is actionable. Dailey's Motion does not address these claims.

### J. THE SAC PLEADS MULTIPLE TOLLING DOCTRINES THAT INDEPENDENTLY DEFEAT THE STATUTE-OF-LIMITATIONS ARGUMENTS

The SAC alleges multiple tolling doctrines that independently defeat Defendants' statute-of-limitations arguments. Plaintiff alleges:

- disability tolling under CCP § 352(a);
- Emergency Rule 9 tolling during the COVID-19 judicial emergency;
- delayed discovery, based on Defendants' concealment and contradictory communications;
- administrative-exhaustion delays, including CFPB complaints;
- the continuing-violation / last-overt-act doctrine, based on misconduct extending into 2024; and

• equitable estoppel tolling, because Defendants' own concealment, contradictory reinstatement figures, "ACTIVE LOAN" statements, delayed recording of the Trustee's Deed, and misrepresentations about authority reasonably induced Plaintiff to believe that no final foreclosure had occurred and prevented earlier filing.

Each doctrine independently extends the limitations period, and together they render Defendants' timeliness arguments untenable. Plaintiff's protected status as a disabled dependent adult and later elder, combined with the San Bernardino County Resolution declaring racism a public health crisis and acknowledging systemic inequities, further supports equitable tolling and delayed discovery. Defendants' Motion does not address any of these doctrines. Their silence operates as a concession, and their statute-of-limitations arguments fail as a matter of law.

### K. <u>THE SAC STATES A VALID UCL CLAIM UNDER ALL THREE PRONGS</u>

The SAC alleges multiple predicate violations—including HBOR violations, federal servicing violations, Civil Code § 3336 conversion damages, and elder-abuse violations—that independently satisfy the UCL's unlawful prong.

The unfair prong is satisfied through allegations of oppressive, destabilizing, and exploitative conduct targeting a vulnerable elder during a pandemic.

The fraudulent prong is satisfied through allegations of misleading reinstatement figures, contradictory "ACTIVE LOAN" statements, concealment of the sale, and refusal to provide bidding records.

Dailey's Motion does not meaningfully address any of these prongs.

### L. <u>DAILEY'S MOTION IMPROPERLY ATTEMPTS TO RESOLVE FACTUAL DISPUTES AT THE PLEADING STAGE</u>

Dailey disputes the timing of the sale, the applicability of the federal moratorium, the authority of the trustee, the chain of title, the accuracy of reinstatement figures, and the significance of post-sale communications. These are factual disputes that cannot be resolved on a Rule 12(b)(6) motion. At this stage, the Court must accept Plaintiff's allegations as true and may not weigh competing factual narratives or adopt Defendants' version of events over the well-pled allegations in the SAC.

### M. THE CONCLUSIVE PRESUMPTION DOES NOT APPLY BECAUSE THE SAC ALLEGES AUTHORITY-DESTROYING DEFECTS AND A SALE THAT WAS NOT FINAL UNDER § 2924H(C)

Defendants rely on Civil Code § 2924(c) and *Moeller* to argue that the trustee's sale is conclusively presumed valid. This argument fails for multiple reasons.

**First**, the conclusive presumption applies only to properly conducted sales by a trustee acting with lawful authority. A sale conducted by an entity that lacked authority is void, not voidable, and a void sale is not entitled to any presumption of validity. *Yvanova*; *Sciarratta*; *Dimock*. The SAC alleges multiple authority-destroying defects, including a defective chain of title, inconsistent beneficiary information, an unrecorded power of attorney, and a defective substitution of trustee. These defects, if true, render the sale void as a matter of law.

**Second**, under Civil Code § 2924h(c), a foreclosure sale is not final until the trustee's deed is recorded. Here, the trustee's deed was recorded more than 50 days after the alleged sale date. During this period, SPS issued "ACTIVE LOAN" statements, reinstatement quotes, and repeatedly treated Plaintiff as the borrower. Plaintiff's own experience confirms that the foreclosure was not final. After discovering that the door handle to her home had been tampered

with, Plaintiff contacted SPS in distress. SPS did not inform her that a sale had occurred; instead, SPS told her the sale was "pending." This admission contradicts Defendants' litigation position and demonstrates that even the servicer did not treat the property as sold.

SPS's contradictory communications—including "ACTIVE LOAN" statements, reinstatement quotes, and the "pending sale" admission—further demonstrate that the foreclosure was not final and that Defendants engaged in misleading and destabilizing conduct. Because the sale was not final, the conclusive presumption never attached.

**Third**, the SAC alleges that the foreclosure occurred during a federal moratorium, which independently renders the sale unlawful and void. A trustee's deed cannot retroactively validate a foreclosure conducted in violation of federal law.

For these reasons, the conclusive presumption does not apply, and Defendants' argument fails as a matter of law.

## N. PLAINTIFF ACTED DILIGENTLY AND PURSUED ADMINISTRATIVE REMEDIES BEFORE LITIGATION

1. Plaintiff pursued administrative remedies before filing suit (CFPB complaints and SPS/NDSC admissions)

Before filing suit, Plaintiff submitted consumer complaints to the Consumer Financial Protection Bureau ("CFPB") in May and June 2024 in an effort to resolve the matter without litigation. SPS responded by acknowledging the "door-handle" statement, apologizing for the inconvenience, and declining Plaintiff's good-faith $850,000 settlement demand. Plaintiff also filed a CFPB complaint against NDSC requesting the bidding records for the June 29, 2021 trustee's sale so

she could verify whether a valid sale had occurred. Instead of providing the requested records, NDSC sent "new owner" paperwork dated August 19, 2021 and refused to disclose the unprivileged bidding records. This refusal prevented Plaintiff from confirming the validity of the sale and contributed to delayed discovery and tolling. Plaintiff pursued administrative remedies first, consistent with good-faith dispute resolution. Litigation became necessary only after SPS and NDSC—and after the earlier misconduct of former defendant Wells Fargo Bank, N.A.—continued through the last overt act and remained uncorrected, leaving the underlying authority defects unresolved.

2. Plaintiff's July 22, 2024 Filing Demonstrates Diligence and Timeliness

Plaintiff referenced the July 22, 2024 filing because it is pled in the SAC as part of the displacement, medical harm, and systemic community-level instability caused by Defendants' unlawful foreclosure. After losing her home, ninety-nine percent of her assets legacy and Plaintiff was forced into shared living quarters, experienced a psychological collapse, and suffered a heart attack during this period. Plaintiff was required to file a related action by a July 19, 2024 statute-of-limitations deadline. A statewide court-system outage on July 19 automatically extended all deadlines to July 22, making the filing timely. These facts—already alleged in the SAC—demonstrate Plaintiff's diligence under extraordinary conditions and directly refute Defendants' claim that Plaintiff failed to act diligently in this case.

3. Plaintiff Faced Extraordinary Circumstances that Defeat Defendants' "lack of diligence" Argument

Defendants' "lack of diligence" argument ignores the extraordinary circumstances pled in the SAC that directly affected Plaintiff's ability to navigate complex foreclosure procedures. As

alleged, Plaintiff spent eight years litigating a federal civil-rights and police-misconduct action, followed by a separate retaliation lawsuit, which took a severe toll on her mental and physical health, finances, and overall stability. Plaintiff also had a State-issued domestic-violence protective order entered on January 10, 2020, meaning the State itself determined that Plaintiff was in danger and required legal protection. Plaintiff entered the COVID-19 pandemic already exhausted, traumatized, and vulnerable. These cumulative hardships—combined with Plaintiff's disability, medical crises, and the unprecedented disruption of the pandemic—significantly impaired her ability to protect her rights.

These facts, already pled in the SAC, demonstrate that Plaintiff acted reasonably and diligently under circumstances that would have overwhelmed even a represented litigant. Plaintiff continued to seek assistance, pursue administrative remedies, request postponements, secure funded tenders, and communicate with SPS despite severe instability and trauma. Defendants' attempt to characterize Plaintiff as inattentive or inactive is inconsistent with the record and disregards the extraordinary conditions under which she was forced to operate. Plaintiff's efforts reflect diligence—not neglect—and these circumstances further support equitable tolling, equitable estoppel, and delayed discovery, defeating Defendants' argument that Plaintiff failed to act in a timely manner. (See SAC Introduction; SAC Procedural History; SAC Factual Background.)

4. Defendants' core premise is false: the SAC does not seek to set aside the sale

Defendants' core premise—that Plaintiff seeks to unwind the June 29, 2021 foreclosure sale—is demonstrably false. The SAC does not seek to set aside the sale. It seeks pre-sale and post-sale damages expressly authorized under California law, including Civil Code § 2924.12. The conclusive-presumption doctrine under § 2924(c) does not bar statutory damages, elder-abuse

damages, UCL restitution, or claims based on pre-sale misconduct. Because Plaintiff does not seek rescission in the SAC, Defendants' reliance on § 2924(c) is misplaced.

California courts have repeatedly held that borrowers may recover damages for unlawful foreclosure practices even where the sale is not unwound. See, e.g., *Valbuena v. Ocwen Loan Servicing, LLC*, 237 Cal. App. 4th 1267 (2015); *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394 (2015); *Sciarratta v. U.S. Bank Nat'l Ass'n*, 247 Cal. App. 4th 552 (2016). Defendants' argument is contrary to binding authority and mischaracterizes the SAC.

### O. EQUITY-PROTECTION PRINCIPLES EXCUSE TENDER

Equity-protection principles independently defeat Defendants' tender arguments. The SAC alleges that SPS refused to postpone the sale despite funded tenders and bona fide offers that would have fully cured the loan and preserved Plaintiff's equity. Under HBOR, the CARES Act moratorium, and Civil Code § 2924h(c), strict tender is excused where servicers obstruct viable cures or engage in conduct that prevents reinstatement or payoff. See SAC ¶¶ 45–50 (Funded Tender and SPS's Refusal to Postpone); ¶¶ 30–37 (Trustee's Sale and Depressed Pricing); ¶¶ 55–60 (Preservation of Tender Issues for Appeal / Coordinated Conduct Resulting in Equity Loss). Because Plaintiff alleges that SPS's conduct made strict tender impossible, inequitable, and contrary to statutory protections, tender is excused as a matter of law. These principles provide an independent basis to deny Defendants' motion.

1. SPS's Conduct Made Strict Tender Impossible and Inequitable

The SAC alleges that SPS issued contradictory reinstatement figures, failed to provide accurate payoff information, misapplied wildfire-insurance proceeds, and destabilized Plaintiff with "ACTIVE LOAN" statements after the alleged sale. SPS also refused to postpone the sale

despite Plaintiff securing a funded tender and a private refinance arrangement that would have cured the default. These allegations establish that SPS's conduct prevented Plaintiff from exercising her reinstatement rights and made strict tender impossible. California courts consistently hold that tender is excused where the servicer's own conduct obstructs reinstatement or payoff.

Additional Context Supporting Tender Excuse: Former real-estate agents and brokers (previously named defendants) contributed to the depressed sale price and equity loss by coercing Plaintiff into an artificially low listing, publishing unauthorized interior photographs, and mishandling critical pre-sale marketing during the final weeks before the foreclosure. These facts are included solely as background because they demonstrate that Plaintiff had viable funded tenders and bona fide offers, and further show that SPS's refusal to postpone the sale prevented a cure and directly caused substantial equity loss.

2. <u>COVID-19 Emergency Conditions Render Defendants' Tender Argument Inapplicable</u>

To the extent the Court previously noted concerns regarding the timeliness of Plaintiff's tender allegations in the FAC, those concerns do not apply to the SAC. The SAC alleges new facts demonstrating that SPS's conduct during the COVID-19 emergency period made strict tender impossible and inequitable. Emergency Rule 9 tolled deadlines statewide; the CARES Act imposed a federal foreclosure moratorium; and HBOR required servicers to provide accurate reinstatement information, meaningful review, and postponements where appropriate. SPS violated these protections by issuing contradictory reinstatement figures, refusing to postpone despite funded tenders, misapplying insurance proceeds, and destabilizing Plaintiff with

"ACTIVE LOAN" statements after the alleged sale. These COVID-era conditions independently excuse tender and render Defendants' argument inapplicable to the SAC.

3. Plaintiff Seeks Damages, Not Rescission, and Tender Is Not Required for Damages Claims

Even if tender were not excused, Plaintiff's claims for wrongful-foreclosure damages, HBOR violations, UCL relief, financial elder abuse, and breach of contract do not require tender because Plaintiff seeks damages, not rescission of the sale. California courts repeatedly hold that tender is not required where the plaintiff seeks monetary relief rather than to unwind the sale. Plaintiff alleges substantial economic loss, equity loss, and post-sale harm caused by Defendants' misconduct. These damages claims proceed regardless of tender.

## P. THE SAC STATES A CLAIM FOR SERVICING MISCONDUCT AND POST-SALE DAMAGES

The SAC alleges detailed servicing misconduct by SPS and NDSC that occurred both before and after the June 29, 2021 foreclosure sale. This misconduct includes:

- misapplication of insurance proceeds,
- issuance of inaccurate and misleading accountings,
- contradictory reinstatement figures,
- destabilizing post-sale communications,
- refusal to provide bidding records, and
- coercive relocation conduct.

See SAC ¶¶ 24–29 (misapplied insurance proceeds, inaccurate accountings, contradictory reinstatement figures); ¶¶ 61–70 (post-sale communications treating the loan as active; refusal to provide bidding records); ¶¶ 71–75 (coercive relocation conduct and post-sale intimidation).

These allegations state independent claims for damages under HBOR, the UCL, and the Elder Abuse Act. Dailey's Motion improperly attempts to recast the SAC as a foreclosure-challenge, ignoring that Plaintiff seeks damages only, as expressly permitted by statute. Post-sale misconduct is actionable regardless of the validity of the foreclosure sale, and Dailey does not Meaningfully address theses allegations.

## Q. <u>THE SAC PROPERLY INCORPORATES DODD-FRANK AND CFPB SERVICING VIOLATIONS</u>

The SAC alleges that SPS engaged in unfair, deceptive, and abusive servicing practices in violation of the Dodd-Frank Act and Regulation X. These violations include:

- providing contradictory reinstatement information,
- issuing inaccurate accountings,
- failing to provide required notices,
- misapplying insurance proceeds,
- failing to comply with COVID-19 procedural safeguards, and
- engaging in conduct that was unfair, deceptive, and abusive.

These allegations fall squarely within the UCL's unlawful prong and HBOR's statutory protections. See SAC ¶¶ 24–27 ("Contradictory Reinstatement Figures"; "Inaccurate Accountings and Notices"); ¶¶ 28–29 ("Misapplication of Insurance Proceeds"); ¶¶ 20–23 ("COVID-19 Safeguard Violations").

Dailey's Motion does not address these federal-law violations at all, nor does it acknowledge that federal servicing standards are incorporated into California's consumer-protection framework. This omission is fatal to Defendants' argument.

## R. DEFENDANTS' STATUTE-OF-LIMITATIONS ARGUMENTS FAIL AND IGNORE MULTIPLE TOLLING DOCTRINES

### 1. Plaintiff Acted Diligently and Pursued Administrative Remedies Before Litigation

Before filing suit, Plaintiff submitted consumer complaints to the Consumer Financial Protection Bureau ("CFPB") in May and June 2024 in an effort to resolve the matter without litigation. SPS responded by acknowledging the "door-handle" statement, apologizing for the inconvenience, and declining Plaintiff's good-faith $850,000 settlement demand. Plaintiff also filed a CFPB complaint against NDSC requesting the bidding records for the June 29, 2021 trustee's sale so she could verify whether a valid sale had occurred. Instead of providing the requested records, NDSC sent "new owner" paperwork dated August 19, 2021 and refused to disclose the unprivileged bidding records. This refusal prevented Plaintiff from confirming the validity of the sale and contributed to delayed discovery and tolling. Plaintiff pursued administrative remedies first, consistent with good-faith dispute resolution. Litigation became necessary only after SPS and NDSC—and after the earlier misconduct of former defendant Wells Fargo Bank, N.A.—continued through the last overt act and remained uncorrected, leaving the underlying authority defects unresolved.

The SAC further alleges that SPS inherited the defective 2015–2016 loan-modification terms from Wells Fargo when it assumed servicing and continued to rely on those erroneous terms after the 2019 transfer to Wilmington/CSMC. SPS used the same defective modification

calculations to assess balances, deny loss-mitigation assistance, and proceed with foreclosure. These inherited defects remained uncorrected through the last overt act and contributed to Plaintiff's delayed discovery, administrative exhaustion, and the need for equitable tolling.

The SAC further alleges that SPS and its third-party agents repeatedly entered Plaintiff's property during the COVID-19 emergency in violation of federal, state, and local pandemic safety orders. SPS sent inspectors and appraisers to Plaintiff's home during periods when in-person property access was restricted, when federal agencies had suspended non-essential property inspections, and when only desktop or video inspections were permitted. Plaintiff—an elder and dependent adult—was entitled to heightened protection. These unauthorized entries caused fear, destabilization, and further harm, and they form part of the pre-sale misconduct Defendants entirely ignore. Such conduct is independently actionable under HBOR, the UCL, and elder-abuse statutes, and it further supports equitable tolling and delayed discovery.

Plaintiff referenced the July 22, 2024 filing because it is pled in the SAC as part of the displacement, medical harm, and systemic community-level instability caused by Defendants' unlawful foreclosure. After losing her home and nearly all of her assets, Plaintiff was forced into shared living quarters, experienced a psychological collapse, and suffered a heart attack during this period. Plaintiff was required to file a related action by a July 19, 2024 statute-of-limitations deadline. A statewide court-system outage on July 19 automatically extended all deadlines to July 22, making the filing timely. These facts—already alleged in the SAC—demonstrate Plaintiff's diligence under extraordinary conditions and directly refute Defendants' claim that Plaintiff failed to act diligently in this case.

Defendants' "lack of diligence" argument ignores the extraordinary circumstances pled in the SAC that directly affected Plaintiff's ability to navigate complex foreclosure procedures. As

alleged, Plaintiff spent eight years litigating a federal civil-rights and police-misconduct action, followed by a separate retaliation lawsuit, which took a severe toll on her mental and physical health, finances, and overall stability. Plaintiff also obtained a domestic-violence protective order in January 2020, entering the COVID-19 pandemic already exhausted, traumatized, and vulnerable. These cumulative hardships—combined with Plaintiff's disability, medical crises, and the unprecedented disruption of the pandemic—significantly impaired her ability to protect her rights.

These facts, already pled in the SAC, demonstrate that Plaintiff acted reasonably and diligently under circumstances that would have overwhelmed even a represented litigant. Plaintiff continued to seek assistance, pursue administrative remedies, request postponements, secure funded tenders, and communicate with SPS despite severe instability and trauma. Defendants' attempt to characterize Plaintiff as inattentive or inactive is inconsistent with the record and disregards the extraordinary conditions under which she was forced to operate. Plaintiff's efforts reflect diligence—not neglect—and these circumstances further support equitable tolling, equitable estoppel, and delayed discovery, defeating Defendants' argument that Plaintiff failed to act in a timely manner.

Defendants' statute-of-limitations arguments fail because they ignore the multiple tolling doctrines pled in the SAC. The SAC alleges disability tolling, COVID-era Emergency Rule 9 tolling, delayed discovery, administrative-exhaustion delays, and the continuing-violation and last-overt-act doctrines. Emergency Rule 9 tolled civil limitations periods statewide from April 6, 2020 through October 1, 2020. Plaintiff's claims accrued during the COVID-19 emergency period, and Defendants' misconduct—including repeated foreclosure scheduling during the

federal moratorium, contradictory communications, and delayed recording—continued into 2021. Defendants do not acknowledge these doctrines, and their silence operates as a concession.

2. Equitable Estoppel Independently Bars Defendants' Statute-of-Limitations Defense

Equitable estoppel also defeats Defendants' statute-of-limitations arguments. A defendant may not invoke the statute of limitations where its own conduct caused the plaintiff to delay filing suit. *Lantzy v. Centex Homes*, 31 Cal.4th 363. The SAC alleges that SPS and NDSC concealed the status of the foreclosure, issued contradictory reinstatement figures, provided "ACTIVE LOAN" statements after the alleged sale, represented that the sale was "pending," refused to provide bidding records, and delayed recording the trustee's deed. These misrepresentations and concealments reasonably caused Plaintiff to believe that reinstatement remained available and that the foreclosure had not been finalized. Plaintiff relied on these statements while pursuing administrative remedies and attempting to resolve the matter without litigation. Defendants cannot benefit from delays their own conduct induced. Equitable estoppel therefore bars Defendants from asserting any statute-of-limitations defense.

## S. THE SAC ALLEGES A CONTINUOUS PATTERN OF MISCONDUCT SUPPORTING THE CONTINUING-VIOLATION AND LAST-OVERT-ACT DOCTRINES

Even if Defendants argue that Plaintiff's claims accrued at the time of the alleged June 29, 2021 foreclosure, the continuing-violation and last-overt-act doctrines preserve Plaintiff's claims because Defendants' misconduct did not end on the alleged sale date. The SAC alleges a continuous course of wrongful acts, concealment, misrepresentations, and post-sale misconduct extending well into 2022 and 2023. These acts include:

- July and August 2021 "ACTIVE LOAN" statements,

- contradictory reinstatement communications,
- refusal to provide bidding records,
- delayed recording of the trustee's deed,
- misapplication of insurance proceeds,
- coercive relocation conduct, and
- the January 3, 2022 lockout.

See SAC ¶¶ 20–23 (COVID-19 safeguard violations; post-sale "ACTIVE LOAN" statements); ¶¶ 24–29 (contradictory reinstatement figures; inaccurate accountings; misapplication of insurance proceeds); ¶¶ 61–70 (post-sale communications; refusal to provide bidding records; delayed recording of trustee's deed); ¶¶ 71–75 (coercive relocation conduct; January 3, 2022 lockout).

Under *Komarova*, *Merritt*, and related authority, these acts constitute a continuous pattern of misconduct that tolls the statute of limitations. Dailey's Motion ignores this ongoing pattern and improperly attempts to collapse years of misconduct into a single event.

### T. <u>THE SAN BERNARDINO COUNTY RESOLUTION DECLARING RACISM A PUBLIC HEALTH CRISIS SUPPORTS EQUITABLE TOLLING AND CONTEXTUAL INTERPRETATION</u>

In 2020, the San Bernardino County Board of Supervisors adopted a Resolution declaring racism a public health crisis, acknowledging systemic inequities affecting Black residents, including disparities in housing, economic stability, and access to justice. The SAC incorporates this Resolution in the subsection titled "Structural Context: Racism, Disability, and Institutional Neglect," alleging that racism in San Bernardino County produces documented disparities in

housing, health, and economic outcomes for Black residents. *See SAC, Structural Context: Racism, Disability, and Institutional Neglect.*

Plaintiff, a Black elder and dependent adult with disabilities, experienced these systemic barriers firsthand during the foreclosure process. The SAC alleges that Defendants exploited this environment and Plaintiff's vulnerability as a disabled elder homeowner of color. *See SAC ¶¶ 1–5 (Plaintiff's disability and protected-status allegations).*

The SAC further alleges that Plaintiff's trauma, disability-related limitations, and the destabilizing conditions of the COVID-19 pandemic impaired her ability to protect her rights, contributed to delayed discovery, and made it difficult to navigate complex legal procedures. *See SAC Introduction ¶¶ 10–18 (describing Plaintiff's trauma, disability-related impairments, and difficulty navigating procedures); SAC Procedural History (describing disability-related confusion and barriers during the judicial emergency).*

This Resolution provides critical context for understanding Plaintiff's vulnerability, the coercive nature of Defendants' conduct, and the structural inequities that contributed to Plaintiff's delayed discovery, difficulty navigating complex procedures, and the need for equitable tolling. Federal courts must consider such systemic context when evaluating pro se pleadings, particularly where the litigant is a member of a protected class and alleges exploitation, undue influence, and financial elder abuse. The Resolution supports equitable tolling, the continuing-violation doctrine, and the Ninth Circuit's requirement that pro se pleadings be liberally construed.

## U. DAILEY'S MOTION AGAIN ATTEMPTS TO RESOLVE FACTUAL DISPUTES IMPROPERLY

Dailey's Motion disputes the timing of the sale, the applicability of the moratorium, the authority of the trustee, the chain of title, the accuracy of reinstatement figures, and the significance of

post-sale communications. These are factual disputes that cannot be resolved on a Rule 12(b)(6) motion. The Court must accept Plaintiff's allegations as true and may not credit Defendants' competing factual assertions. Dailey's attempt to convert a motion to dismiss into a fact-finding exercise is improper and contrary to controlling precedent.

## V. PLAINTIFF'S STATUS AS A PROTECTED ELDER AND DEPENDENT ADULT REQUIRES HEIGHTENED JUDICIAL SCRUTINY, LIBERAL CONSTRUCTION, AND APPLICATION OF EQUITABLE DOCTRINES

### 1. Plaintiff's Age, Disability, and Elder Status Are Legally Relevant and Support Multiple Claims

Plaintiff is a legally protected disabled woman of color who was a dependent adult under Welfare & Institutions Code § 15610.23 during the servicing period and became an elder under § 15610.27 upon turning sixty in January 2020. At the time of the June 29, 2021 foreclosure sale, Plaintiff was 61 years old—approximately six months away from qualifying for a federally insured reverse mortgage (HECM). Defendants' rush to foreclose deprived Plaintiff of this critical financial alternative and exploited her age, disability, and heightened vulnerability. Plaintiff later turned sixty-five during the limitations period applicable to several causes of action, further entitling her to disability- and elder-status tolling under California law. These facts directly support Plaintiff's Financial Elder Abuse claim and further demonstrate the unfair, oppressive, and abusive nature of Defendants' conduct under the UCL, HBOR, and Dodd-Frank § 1036.

### 2. Plaintiff Qualifies as a Protected Elder and Dependent Adult Under California Law

Plaintiff is a protected person under California's Elder Abuse and Dependent Adult Civil Protection Act. The SAC alleges that Plaintiff qualified as a dependent adult under Welfare & Institutions Code § 15610.23 due to documented disabilities, trauma-related limitations, post-concussion symptoms, cardiac complications, episodes of acute psychological distress, and functional impairments. *See SAC ¶¶ 1–5 (pp. 8–9).*

As of January 2020, Plaintiff also qualified as an elder under § 15610.27, and she is now over sixty-five. *See SAC ¶¶ 1–3 (p. 8).* These statutory classifications impose heightened duties on financial institutions and require courts to apply enhanced protections when evaluating allegations of exploitation, undue influence, and financial abuse. California law directs courts to construe EADACPA liberally and remedially in favor of elders and dependent adults.

3. <u>Plaintiff's Trauma, Disability-Related Limitations, and the COVID-19 Emergency Impaired Her Ability to Protect Her Rights</u>

The SAC further alleges that Plaintiff's vulnerability was compounded by severe trauma and destabilization leading into and during the COVID-19 pandemic. Plaintiff entered 2020 already exhausted and traumatized after years of civil-rights litigation, gender-based violence, and disability-related medical crises. *See SAC Introduction ¶¶ 10–18 (pp. 4–6).* These circumstances impaired Plaintiff's ability to protect her rights, contributed to delayed discovery, and support the application of equitable tolling, disability tolling, and the continuing-violation doctrine.

4. <u>Defendants Exploited Plaintiff's Vulnerability</u>

The SAC alleges that Defendants were aware of Plaintiff's protected status and exploited it by providing contradictory reinstatement figures, failing to maintain a consistent Single Point of Contact, misapplying wildfire-insurance proceeds, issuing destabilizing "ACTIVE LOAN" statements after the purported sale, withholding accurate payoff information, and refusing to

postpone the foreclosure despite Plaintiff's funded tenders and bona fide offers. *See SAC ¶¶ 24–29 (pp. 22–25); ¶¶ 45–50 (pp. 33–36); ¶¶ 61–70 (pp. 41–46).* NDSC substantially assisted in this exploitation by conducting the June 29, 2021 sale despite unresolved loss-mitigation issues and contradictory communications from SPS. *See SAC ¶¶ 30–37 (pp. 25–29); ¶¶ 45–50 (pp. 33–36).*

5. Plaintiff's Vulnerability Continued After the Sale

The SAC also alleges that Plaintiff's vulnerability continued after the sale, culminating in the January 3, 2022 lockout and the loss of nearly all of her personal property. *See SAC ¶¶ 61–75 (pp. 41–49).*

6. Structural Racism in San Bernardino County Reinforces the Need for Liberal Construction and Equitable Tolling

Finally, the SAC situates Plaintiff's experience within the broader systemic inequities recognized by the San Bernardino County Resolution declaring racism a public health crisis. *See SAC, structural Context: Racism, Disability, and Institutional Neglect (pp. 19–20).* This context reinforces Plaintiff's vulnerability, supports liberal construction of her pro se allegations, and strengthens the equitable doctrines—including disability tolling, delayed discovery, and the continuing-violation rule—that apply here.

**W. DEFENDANTS' MOTION FAILS UNDER RULE 12(B)(6) BECAUSE THE SAC STATES MULTIPLE PLAUSIBLE CLAIMS**

Even setting aside Defendants' procedural defects, misstatements, and omissions, the Motion fails under Rule 12(b)(6) because the SAC states multiple plausible claims for relief. The SAC alleges detailed facts supporting wrongful-foreclosure damages, HBOR violations, financial elder abuse, unfair business practices, breach of contract, and breach of the implied covenant. Each claim is supported by specific factual allegations, including authority defects, dual tracking,

contradictory communications, mishandling of insurance proceeds, failure to provide a single point of contact, refusal to postpone despite funded tenders, and post-sale misconduct. Under *Iqbal* and *Twombly*, these allegations must be accepted as true and construed in Plaintiff's favor. Because the SAC alleges far more than the minimal factual content required to state a plausible claim, dismissal is improper.

## X. CONCLUSION

Defendants' Motion to Dismiss rests on a mischaracterization of the SAC, an incorrect statement of the governing legal standards, and an improper attempt to resolve factual disputes at the pleading stage. The SAC alleges detailed, plausible facts supporting each cause of action, including authority-destroying defects, violations of the federal foreclosure moratorium, HBOR violations, UCL violations, financial elder abuse, servicing misconduct, and post-sale wrongful acts. Under Rule 12(b)(6), these allegations must be accepted as true and construed liberally in Plaintiff's favor, particularly given Plaintiff's status as a protected elder and dependent adult, the systemic inequities recognized by the San Bernardino County Board of Supervisors' Resolution declaring racism a public health crisis, and the Ninth Circuit's heightened protections for pro se litigants.

The conclusive-presumption argument fails because the SAC alleges a foreclosure conducted without lawful authority, during a federal moratorium, and not finalized under Civil Code § 2924h(c) until more than fifty days after the alleged sale date. A trustee's deed cannot retroactively validate a void sale. Defendants' tender, timeliness, and preclusion arguments likewise fail because Plaintiff seeks damages only, alleges multiple tolling doctrines, and raises claims and facts not previously litigated.

//

Equity-protection principles further defeat Defendants' tender arguments. Plaintiff pled that SPS refused to postpone despite funded tenders and bona fide offers, directly stripping her of equity. Under HBOR, the CARES Act moratorium, and Civil Code § 2924h(c), strict tender is excused where servicers obstruct viable cures and equity preservation. These principles independently support denial of Defendants' motion.

At this stage, the Court must accept Plaintiff's allegations as true and allow the claims to proceed to discovery. For all the reasons stated above, Defendants' Motion to Dismiss should be denied in its entirety.

## Y. PRAYER FOR RELIEF

1. Deny Defendants' Motion to Dismiss in its entirety;
2. Allow all causes of action in the Second Amended Complaint to proceed to discovery, including Plaintiff's claims for violations of the Homeowner Bill of Rights, the Unfair Competition Law, financial elder abuse, breach of contract, servicing misconduct, and all related statutory and common-law claims;
3. Reject Defendants' arguments regarding the conclusive presumption, tender, timeliness, and preclusion, as inconsistent with the allegations, governing law, and the liberal-construction standard applicable to pro se litigants and protected persons;
4. Recognize Plaintiff's status as a protected elder and dependent adult, and apply the heightened protections, equitable doctrines, and liberal-construction principles required under California law, the Elder Abuse Act, and Ninth Circuit precedent;
5. Take judicial notice of the San Bernardino County Board of Supervisors' Resolution declaring racism a public health crisis, as relevant systemic context supporting Plaintiff's vulnerability, equitable tolling, and delayed discovery;

6. Apply equity-protection principles excusing strict tender where servicers obstruct viable cures and strip borrower equity, including during the COVID-19 emergency period, consistent with HBOR, the federal CARES Act foreclosure moratorium, California's COVID-19 protections (including Emergency Rule 9), and Civil Code § 2924h(c), as alleged in the SAC's sections on "Trustee's Sale and Depressed Pricing" and "Preservation of Tender Issues for Appeal."
7. Grant such other and further relief as the Court deems just and proper in light of the allegations, Plaintiff's protected status, and the remedial purposes of the statutes invoked.

Dated: May 5, 2026,

Respectfully submitted,

By /s/: Rovinski Renter